UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA SHELTON and VERNON GLASS, <br><br> Plaintiffs, <br><br> v. <br><br> LISA MADIGAN, Illinois Attorney General, et al. <br><br> Defendants. | No. 06 C 4259 <br><br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

On August 7, 2006, plaintiffs Linda Shelton ("Shelton") and Vernon Glass ("Glass") (together, "plaintiffs"), filed a 14-count complaint pursuant to 42 U.S.C. § 1981 *et seq.*, seeking damages, injunctive and declaratory relief against Lisa Madigan, Attorney General of Illinois, the Illinois Attorney General's Office, and two assistant attorneys general, as well as the Illinois State Police, its Director, Larry Trent, and three of its investigators (collectively, "defendants").[1] Plaintiffs seek a declaratory judgment and damages against all defendants for allegedly depriving plaintiffs of their constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments based on their acts taken in furtherance of a prosecution of plaintiffs for Medicaid fraud in the courts of Illinois. Defendants have moved to dismiss all of plaintiffs'

---

[1]The complaint names John Fearon and Patrick Murray as Assistant Attorneys General, and William D. Riebel, Jr., Nicholas Cozzolino, and Patrick Keenan as investigators employed by the Medicaid fraud control unit of the Illinois State Police. Larry Trent is named in his official capacity as director of the Illinois State Police, and not as an individual.

claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Based on the jurisdictional considerations discussed below, as well as the defendant's failure to state a claim against certain defendants, defendants' motion to dismiss [#29] is granted.

## STANDARD OF REVIEW

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in favor of the plaintiff. *McMillan* v. *Collection Professionals Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Weiler* v. *Household Finance Corp.*, 101 F.3d 519, 524 n.1 (7th Cir.1996) (citations omitted).

In ruling on defendants' motion to dismiss, plaintiff's *pro se* complaint will be liberally construed and held to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam); *accord McCormick* v. *City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). A *pro se* complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 520–21.

## BACKGROUND

According to the complaint, plaintiffs were indicted by a Cook County grand jury for vendor fraud and theft and are currently facing criminal charges in the Cook County Circuit Court under Case No. 04 CR 17571. Assistant Attorney General John Fearon appeared before

the grand jury, and Cook County Circuit Court Judge Kathleen Pantley is presiding over the criminal case. Plaintiffs allege that the indictment and pending criminal charges against them are null and void for a number of reasons, for example, that (1) the grand jury that issued the indictment was never legally impaneled; (2) the Attorney General's Office lacks authority to prosecute the plaintiffs without the authorization of the Cook County State's Attorney, and no such authorization was granted; and (3) the Circuit Court of Cook County has no jurisdiction to hear the case. Plaintiffs also protest several rulings by Judge Pantley, including an order holding Shelton in criminal contempt, as well as a number of orders that Shelton undergo a mental fitness exam.

The complaint alleges seven counts under 42 U.S.C. § 1983. Count I alleges that one or more defendants failed to intervene to stop a deprivation of constitutional rights, and aided and abetted the deprivation of constitutional rights, allowing the prosecution to go forward despite having knowledge that it was baseless. Count II alleges indictment, arrest, and prosecution without probable cause. Counts III, IV, V, VI, and VII assert claims for unlawful arrest, seizure, and imprisonment. Count VIII alleges conspiracy to deprive the plaintiffs of their constitutional rights by prosecuting the plaintiffs for vendor fraud without constitutional or statutory authority to do so. Count IX is a "*Monell* claim" against the Illinois State Police and the Attorney General's Office, alleging that both agencies were on notice that the prosecution of plaintiffs and similarly situated individuals for vendor fraud is unconstitutional. Because *Monell* claims can only be asserted against local government units and not against state agencies, plaintiffs' *Monell*

claims must be dismissed and will not be considered further in the discussion below.[2] Plaintiffs also allege several supplemental state law claims, for malicious prosecution (Count X), intentional infliction of emotional distress (Count XI), and civil conspiracy (Count XII), and *respondeat superior* against the two departments of the State of Illinois (Counts XIII and XIV).

## DISCUSSION

### I. *Younger* Bars to Plaintiffs' Claims for Injunctive and Declaratory Relief

Defendants contend that the principles announced by the Supreme Court in *Younger* v. *Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), and elaborated in its subsequent decisions, *see, e.g.*, *Samuels* v. *Mackell*, 401 U.S. 66, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971), prevent this court from granting injunctive or declaratory relief against any of the defendants. The complaint does not explicitly seek injunctive relief (in some instances it seeks only declaratory relief),[3] but plaintiffs assert in their response that they seek "any relief that is equitable and just, including injunctive relief . . . . although this phrase was inadvertently left out of some of the counts." Pls.' Resp. at 49. Plainly, one thrust of the complaint is to stop the state

---

[2] In *Monell* v. *New York City Dept. of Social Services.*, the Supreme Court held that municipalities are "persons" suable under § 1983. 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Court has reiterated, however, that its holding in *Monell* was "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Quern* v. *Jordan*, 440 U.S. 332, 338, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (quoting *Monell*, 436 U.S. at 690 n.54). The Illinois Attorney General's Office and the Illinois State Police, as parts of the State of Illinois, cannot be sued under §1983, because states are not "persons" suable under §1983. *See Will* v. *Mich. Dep't of State Police*, 491 U.S. 58, 64, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Miller* v. *Chicago Public Library*, No. 05 C 7095, 2006 WL 1006002, at *7 (N.D. Ill. April 11, 2006).

[3] Although plaintiffs' claims are largely claims for damages, five of the 14 counts contain a demand for "whatever additional relief this Court deems equitable and just." Pls.' Compl. at 41, 52–54. In addition, the first sentence of the complaint indicates that plaintiffs "seek[] declaratory judgment." Pls.' Compl. at 1.

4

court prosecution from going forward. *See, e.g.*, Compl. at 4–5 (alleging that the criminal cases against the plaintiffs "are a disgrace on the courts"); *id.* at 10 (arguing that the prosecutions are "fraudulent, in violation of Federal Code, illegal, and null and void"); *id.* at 11 (alleging that "[t]he indictments are fatally flawed"). Therefore, the court will address whether injunctive and declaratory relief is barred by the *Younger* doctrine.

The *Younger* doctrine generally requires federal courts to abstain from exercising jurisdiction, even if all jurisdictional requirements are met, if doing so is necessary to avoid interfering with pending state criminal prosecutions. *See generally Younger*, 401 U.S. 37. In *Younger*, the Court stressed that "[f]ederal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional." *Id.* at 46. As the Court explained in *Younger*, this policy stems from the doctrines of equity and comity.[4] *See id.* at 43–44. In *Samuels*, the Court extended *Younger* to declaratory judgments, holding that federal courts may not provide declaratory relief to a plaintiff who is subject to a pending criminal prosecution in state court. 401 U.S. at 71–73. As the Court noted in *Samuels*, "ordinarily a declaratory

---

[4] The *Younger* Court described the doctrine of equity as the notion that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief," and the doctrine of comity as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 43–44.

judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Id.* at 72.[5]

Plaintiffs cite *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), for the proposition that state officers may be sued in an official capacity for injunctive relief and argue that because "the Eleventh Amendment does allow *prospective* relief in the form of an injunction . . . . an injunction preventing further fraudulent criminal proceedings that violate the Federal Medicaid Code would be appropriate." Pls.' Resp. at 49 (emphasis added). Although plaintiffs are correct that, under certain circumstances, *Ex parte Young* permits prospective injunctive relief against state officials, that case represents a limited exception to the Eleventh Amendment and the abstention doctrines subsequently articulated by the Court in *Younger* and *Samuels*. The prospective relief requested by the plaintiffs is an injunction against a *pending* state criminal prosecution—the very sort of interference by federal courts that *Younger* expressly forbids. *See Palmer* v. *City of Chicago*, 755 F.2d 560, 573–74 (7th Cir. 1985) (quoting *Younger*, 401 U.S. at 403) (noting the "'longstanding public policy against federal court interference with state court proceedings,' especially ongoing state criminal proceedings"). Plaintiffs' claims for injunctive and declaratory relief, therefore, must be dismissed with prejudice on the basis of the *Younger* abstention doctrine.

---

[5] Although there are narrow exceptions to the *Younger* abstention doctrine, *see, e.g.*, *Gerstein* v. *Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) (allowing injunctive relief against state prosecution after finding that state proceedings were inadequate), none of those exceptions is applicable here.

## II. *Heck* v. *Humphrey* Bars to Plaintiffs' Claims for Damages

Because the plaintiffs' claims arise from criminal matters that are presently pending before the Circuit Court of Cook County, defendants argue that plaintiffs' claims for damages are barred by *Heck* v. *Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87 (footnotes and citations omitted). As the Court explained, "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

In *Heck*, the Court did not explicitly consider "claims which, if successful, would necessarily imply the invalidity of a *potential* conviction on a *pending* criminal charge." *Washington* v. *Summerville*, 127 F.3d 552, 555 (7th Cir. 1997) (emphasis added). In *Washington* v. *Summerville*, however, the Seventh Circuit did address such claims, holding that "a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under § 1983." *Id.* at 556. Thus, if a plaintiff's success on any

7

of her claims would necessarily imply the invalidity of her pending prosecution, such claims cannot accrue "so long as the potential for a judgment in the pending criminal prosecution continues to exist." *Id.* at 556.

In this case, plaintiffs' claims are expressly based on the repeated allegation that the defendants' pending prosecution of plaintiffs for vendor fraud is invalid. Plaintiffs allege, for example, that (1) "the indictment is invalid per case law, because the grand jury was never legally impaneled" and that "[a]s a result the case is null and void and the [state] trial court has no jurisdiction" (Pls.' Compl. ¶ 72); (2) "the Attorney General had absolutely NO authority to initiate a prosecution, appear before the grand jury or prosecute" the plaintiffs (Pls.' Compl. at ¶ 79); (3) "without the authority of the 'prosecutor' to obtain an indictment before the special grand jury and to prosecute, the case is null and void because the indictment and all actions taken in the case are null and void" (Pls.' Compl. at ¶ 81); (4) because "the Illinois Medicaid Physician Handbook is unconstitutional," it "is not part of the penal code of the state of Illinois," and therefore "no crime has been alleged and the indictment, all hearings and prosecution is [*sic*] null and void" (Pls.' Compl. at ¶¶ 92–93); (5) the state trial court "has conducted itself in total violation of Plaintiffs['] civil rights under the Constitution" (Pls.' Compl. at ¶ 94); (6) because plaintiff Shelton "never agreed to waive her right to counsel in the absence of a standby counsel," "all hearings after August 5, 2005 are null and void as Plaintiff Shelton was not legally represented by counsel" (Pls.' Compl. at ¶ 95); and (7) the state trial court "denied . . . [p]laintiffs' motion to dismiss due to violation of statue of limitations, in violation of case law and state statute" (Pls.' Compl. at ¶ 96).

Defendants concede that if plaintiffs' claims are likened to claims for false arrest, they may not be subject to dismissal under *Heck*, because a successful false arrest claim does not necessarily invalidate a conviction. *Booker* v. *Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996). But as the Seventh Circuit noted in *Wiley* v. *City of Chicago*, such a possibility does not "creat[e] an invariable rule that false arrest claims under the Fourth Amendment accrue at the time of arrest." 361 F.3d 994, 997 (7th Cir. 2004). In some cases, "a successful challenge to a false arrest can indeed impugn the validity of the plaintiff's conviction." *Id.* Thus, plaintiffs may "sometimes have to wait until their criminal charge or conviction is set aside or dismissed before they can bring suit." *Id.* This appears to be such a case, as, according to the plaintiffs, the only evidence used to support the indictment and arrest was Investigator Riebel's testimony, and the pending prosecution will presumably rest heavily on this same evidence. Thus, following the Seventh Circuit's interpretation of *Heck* in *Washington*, 127 F.3d at 556, all of plaintiffs' § 1983 claims for damages must be dismissed without prejudice on the ground that, if successful, they would necessarily imply the invalidity of the pending criminal prosecution against the plaintiffs. Plaintiffs' claims simply have not yet accrued and will "not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist." *See id.*

Because the only remaining counts of plaintiffs' complaint are state law claims that would rely on supplemental jurisdiction under 28 U.S.C. § 1367, dismissal of plaintiffs' § 1983 claims effectively requires dismissal without prejudice of the state law claims as well. *See United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 726–27, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

9

While *Heck*, in effect, requires dismissal without prejudice of all of plaintiff's claims for damages, a number of other jurisdictional and immunity considerations further require dismissal *with* prejudice of certain claims asserted by the plaintiffs. These additional bases for dismissal are discussed below.

### III. Eleventh Amendment Bars to Plaintiffs' § 1983 Claims for Damages

Defendants contend that plaintiffs' official-capacity claims for damages against the individual defendants and the claims for damages against the State Police and the Attorney General's Office are barred by the Eleventh Amendment. A suit brought against a state officer in her official capacity is actually a suit against the state for which that officer works. *Kentucky* v. *Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). In a § 1983 action against a state or a state officer, "a federal court's remedial power, consistent with the Eleventh Amendment is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury." *Owen* v. *Lash*, 682 F.2d 648, 654 (7th Cir. 1982) (quoting *Edelman* v. *Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1973) (citing *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908); *Ford Motor Co.* v. *Dept. of Treasury*, 323 U.S. 459, 65 S. Ct. 347, 89 L. Ed. 389 (1945))) (internal citations and quotation marks omitted).

The Attorney General's Office and the Illinois State Police are, as plaintiffs concede, departments of the State of Illinois. Any judgment for damages entered against these departments, or against their employees in an official capacity, would have to be paid by the

State of Illinois. Plaintiffs' official-capacity claims for damages against the individual defendants, as well as claims for damages against the Illinois Attorney General's Office and the Illinois State Police, therefore must be dismissed with prejudice.

Finally, plaintiffs' state law claims against the Illinois State Police and the Attorney General's Office are likewise barred by the Eleventh Amendment and therefore must be dismissed with prejudice.

### IV. Judicial Immunity Bars to Claims Against Judge Pantley

Plaintiffs' complaint raises a number of claims against Judge Pantley, the trial judge presiding over the state criminal case against plaintiffs for vendor fraud. Defendants have moved to dismiss all claims against Pantley based on the common law doctrine of absolute judicial immunity. Plaintiffs contend that Judge Pantley's "absolute judicial . . . immunity [is] breached in this case" due to the "total and complete lack of constitutional or statutory jurisdiction in Cook County Circuit Court." Pls.' Compl. at 2.

Judicial immunity "shields judges from civil liability for their judicial actions." *Brokaw* v. *Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000). A long line of Supreme Court precedent has recognized that "generally, a judge is immune from a suit for money damages." *Mireles* v. *Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (citations omitted). As the Supreme Court has explained, "[a]lthough unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* at 10. As a result, "judges are not liable in civil actions for their judicial acts unless they have acted in the clear

11

absence of jurisdiction. Moreover, a judge will not be deprived of immunity even if the action was in error, was done maliciously, was in excess of his authority, and even if his exercise of authority is flawed by the commission of grave procedural errors." *Brokaw*, 235 F.3d at 1015 (citations omitted).

As presented in the complaint, Judge Pantley's conduct consists solely of judicial acts: presiding over criminal proceedings, conducting hearings, and issuing orders in the state criminal case against Shelton and Glass. The Illinois Constitution provides that, with limited exceptions, "Circuit Courts shall have original jurisdiction of all justiciable matters." Ill. Const. Art. 6, § 9. A judge's asserting jurisdiction over a criminal case brought by a state prosecutor's office for violation of state law is not clearly outside the boundaries of such broad jurisdiction, as plaintiffs argue. Judge Pantley, therefore, did not "act in the clear absence of jurisdiction." *See Brokaw*, 235 F.3d at 1015. Judge Pantley is thus protected from plaintiffs' claims by the doctrine of absolute judicial immunity and must be dismissed with prejudice as a defendant in this case.

**V. Quasi-Judicial Immunity Bars to Claims Against Madigan, Fearon, and Murray**

Plaintiffs' claims against Attorney General Madigan and Assistant Attorneys General Fearon and Murray are similarly barred by these defendants' absolute immunity for quasi-judicial conduct. As the Seventh Circuit explained in *Henry* v. *Farmer City State Bank*, "a prosecutor enjoys absolute immunity from civil suit under § 1983 for damages 'in initiating a prosecution and in presenting the State's case.' This immunity shields the prosecutor even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." 808 F.2d 1228, 1238 (7th Cir. 1986) (quoting *Imbler* v. *Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976)). The actions in which Madigan,

12

Fearon and Murray allegedly engaged—*e.g.*, initiating grand jury proceedings against Shelton and Glass, choosing which witnesses to call before the grand jury, and prosecuting the criminal case—are exactly the sort of prosecutorial decision-making and conduct that immunity protects. *See, e.g.*, *Redwood* v. *Dobson*, 476 F.3d 462, 466 (7th Cir. 2007) (noting that a prosecutor is entitled to absolute immunity regarding her decisions about which witnesses to call before a grand jury and whether to commence a criminal prosecution). Madigan, Fearon, and Murray therefore must be dismissed with prejudice as individual-capacity defendants in this case.

### VI. Witness Immunity Bars to Claims Against Riebel

Defendants also seek dismissal of defendant Riebel based on the doctrine of witness immunity. Plaintiffs' claims against Riebel, an investigator employed by the Medicaid Fraud Control unit of the Illinois State Police, are apparently based on his appearance as the state's sole witness before the grand jury. Plaintiffs' allege that Riebel repeatedly lied to and withheld important information from the grand jury. Plaintiffs argue, therefore, that his testimony amounted "to fraud upon the court and the jury, as well as perjury." Pls.' Compl. at 26. It is well established, however, that a witness has absolute immunity for her testimony before a grand jury and cannot be held liable under § 1983 for "what she said or did not say to the grand jury." *Kompare* v. *Stein*, 801 F.2d 883, 890 (7th Cir. 1986). Thus, even if plaintiffs' allegations were true, Riebel is absolutely immune from prosecution for his testimony before the grand jury and therefore must be dismissed with prejudice as a defendant in this case.

### VII. Failure to State a Claim Under § 1981

Referring to plaintiffs' allegation at page one of the Complaint that they have brought their claims "pursuant to 42 U.S.C. § 1981 *et seq*.," defendants seek dismissal of any claims

intended to state a claim under § 1981. In response, plaintiffs concede that they have not stated a claim under § 1981, acknowledging that § 1981 claims must be based on race or ethnic discrimination. *See Saint Francis College* v. *Al-Khazraji*, 481 U.S. 604, 609–10, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987) (claims brought under § 1981 must involve allegations of racial discrimination).

As pled, the individual civil rights counts all rest on § 1983 rather than § 1981. Plaintiffs suggest, however, that it is "possible" that plaintiffs "have an *unstated* claim under § 1981, as Glass is African American and Shelton, although Caucasian, is well known as an advocate for mentally and physically disabled minorities in foster care and who obtain health care with a Medicaid card, in the Cook County area, even having the nickname of 'very white sister' in the Chicago inner city, in addition to the fact that this fraudulent prosecution amounts to illegal discrimination against persons of color (Plaintiff's Medicaid patients—who are primarily persons of color)." Pls.' Resp. at 47 (emphasis added). Whatever the potential for a § 1981 claim may be, this complaint does not allege that the prosecution of plaintiffs was initiated or otherwise pursued based on racially discriminatory motives. Thus, to the extent that plaintiffs attempt to state any claims under § 1981, the motion to dismiss such claims is granted.

## CONCLUSION

To summarize, all of plaintiffs' claims for injunctive and declaratory relief are dismissed with prejudice because they are barred by the *Younger* abstention doctrine. All of plaintiffs'

§ 1983 claims for damages are dismissed without prejudice because they are barred by the principles set out by the Supreme Court in *Heck*. Dismissal of plaintiffs' § 1983 claims for damages likewise requires dismissal without prejudice of plaintiffs' supplemental state law claims for damages for lack of subject matter jurisdiction.

In addition, some of plaintiffs' claims for damages must be dismissed *with* prejudice for reasons independent of *Heck*. The Eleventh Amendment requires dismissal with prejudice of plaintiffs' official-capacity claims for damages against the individual defendants, as well as plaintiffs' claims for damages against the Illinois Attorney General's Office and the Illinois State Police. All of plaintiffs' claims against Judge Pantley, Attorney General Madigan, Assistant Attorneys General Fearon and Murray, and Investigator Riebel are dismissed with prejudice because each of these defendants is protected from plaintiffs' claims by some form of immunity. Finally, to the extent that plaintiffs attempt to state a claim under § 1981, the motion to dismiss such claims is granted for failure to state a claim.

In sum, defendants' amended motion to dismiss [#29] is granted, and all of plaintiffs' claims against all of the defendants are dismissed.

Dated: October 29, 2007          Enter: _____

                                                                 JOAN HUMPHREY LEFKOW
                                                                  United States District Judge